1-223-Koneka Corporation v. SKC Kolon PI Mr. Roland? Good morning, Your Honors. May it please the Court, my name is Patrick Rolands. I represent the appellant Kaneka Corporation. This case is about the intersection of inherency and obviousness, and more specifically about the use of inherency in the context of an obviousness analysis. This case should be reviewed under the de novo standard of review that applies to determinations of obviousness. The determinations of obviousness are decided under the de novo standard of review. The underlying issues of fact are subject to substantial evidence. However, in this case, there are no facts that are in dispute. In its decision on appeal, the Board conducted a carefully circumscribed inherency analysis of the Akahori reference and made a determination that the Akahori reference fails to disclose a PI film with an average thickness of 20 microns that would result in a PI film having a claimed stiffness value or having a calculated stiffness value within the claimed range. And that factual finding was not appealed. Because the Board made this factual determination in its inherency analysis, it reversed the CRU examiner's anticipation rejection. And that issue was not appealed and is not before the Court here today. So the remaining question is the Board's obviousness analysis. And the obviousness analysis of the Board is subject to the de novo standard. Now, in its decision on appeal, the Board made several errors contrary to this Court's precedence when it was doing its obviousness analysis. Contrary to this Court's precedence in PAR Pharmaceutical and in INRI Ricker and in INRI Ulrich. And so starting with PAR Pharmaceutical, the Board failed to carefully circumscribe its inherency analysis in the context of obviousness. Even though it had already conducted the inherency analysis in the context of anticipation, it changed its inherency analysis in the context of obviousness. And in doing so, it violated this Court's precedence in PAR. I didn't quite follow that, and so I'd like you to develop that a little bit more. My understanding of the reversal of the 102 is that the Akahori reference, while it does talk about having polyimide films with a thickness between 15 to 25 microns, didn't explicitly talk about average thickness. And so therefore, it elected not to adopt the 102 rejection. But nevertheless, it said it would be obvious to take the teachings of Akahori and come up with a polyimide film with an average thickness of 20 microns. And that seems to be a reasonable conclusion to derive from Akahori's expressed teachings. So the usage of inherency didn't really come up in the 102 context. It only came up in the 103 context. The Board never needed to wrestle with the 102 question, with the inherency question in 102. It only came up in 103. That's incorrect. So the inherency analysis is fundamental to both 102 and 103. And what happened was the Board did its analysis of Akahori, its inherency analysis of Akahori, in the context of anticipation. Because the missing element is the stiffness of the film. And so what the Board is doing is it's looking at Akahori to determine whether or not the PI film that's disclosed there inherently possesses the stiffness. Are we talking about 102 or 103? Both. But the basis for reversing the 102 rejection was this question of whether Akahori really was teaching polyimide films with an average thickness of 20 microns. That's correct. Okay, so then that ended the question of whether or not it needed to go further and decide for itself whether there would be inherency of the stiffness claim value. Yeah, so the average thickness is not the missing element from the claim. The missing element from the claim is the stiffness of the film. And so in order to get – We're talking about 103 now. Both. Well, can you take me to the Board's decision on 102 where it actually says we're not taking – Yeah, I think the specific quote – You know, we cannot find that Akahori teaches an average thickness or X abs as recited in the 704 path. So – And therefore, consequently – It doesn't have – Because when you plug the thickness value into the stiffness equation, you fail to get a value, a calculated stiffness value that's within the claimed range. Right. So the proposal for the rejection was that Akahori teaches an average thickness of 20 microns. Right. And then the Board said, not so fast. It doesn't actually say average thickness of 20 microns. So therefore, we can't just plug that in to figure out what the stiffness value is for Akahori because we can't be certain that it really discloses an average thickness of 20 microns. Nevertheless, it'd be obvious from Akahori's teaching to come up with a polyimide film of average thickness of 20 microns. Now let's go see and find out if that 20 micron average thickness would result in a stiffness value as recited in your claim. Correct. And that's exactly where the court ran afoul of the Parr Pharmaceutical case issued by this court recently in – last December. Because what Parr Pharmaceutical says is that for the court to employ elements from the prior art in an inherency analysis in the context, overall context of obviousness, those elements must be explicitly disclosed. However, the 20 micron thickness was not explicitly disclosed in the Akahori reference as evidenced by the Board's prior finding that the Akahori reference fails to sufficiently disclose the average thickness of 20 microns. Well, when I read our court's case law when it comes to Parr Pharmaceutical, Centaurus, Alcon, In Recal, the theme is when it comes to inherency in the 103 context, you're not allowed to use information that's unknown but inherent. That inherent but unknown information to combine teachings to render a claim obvious, that's an improper use of inherency. Then that recitation of that inherent but unknown property isn't going to be a patentable consequence. Correct. So now we get to the fact here, if it's obvious to go ahead and use an average thickness of 20 microns based on the teachings of Akahori, then if in fact it's inherent in Akahori's 20 average micron thickness that it would have the claimed range of stiffness values, then that seems to be a classic and appropriate use of the inherency doctrine in the 103 context. Well, the Centaurus line of cases is different. So Centaurus, Sisa-Cow, Sisa-King. And in that line of cases, each one of those cases dealt with a claim that had a claimed element which was the natural result of administering a drug to a person. And so what the courts were saying in that line of cases is that if the pharmaceutical composition is obvious and then the only remaining steps in the claim are to administer to a person and then claim the resulting concentration in the blood or whatever it might be, that is inherent in this obvious combination. And in those cases, each one of the obvious combinations were explicitly disclosed. And then what was missing was the natural result part. And in this case, we don't have the same situation because even if the composition part is obvious in our claim, the resulting stiffness value is not the natural result of the combination or the natural result of the composition. Because you could take a composition and you could turn it into a PI film and it could have a vastly different stiffness value than what we've claimed. And that's in evidence here before this court and before the board because lots of the references that are cited when we take the variables cited for the PI films in those references and we plug them into the stiffness equation, they turn out to have a stiffness value that's not within the claimed range. And so therefore, we can't say that the natural result of the chemical composition is the missing element in our claim. I think the question is why wasn't it reasonable or appropriate for the PTO to rely on that regression analysis to understand what was the K value that was being used in your specification and plug that into Akahori to figure out what the stiffness value is. I don't know what other way we could analyze Akahori other than doing it that way. Well, okay, so two answers to the question. I mean, first of all, even if you use that single K value that was a result of the regression analysis, you still end up with stiffness values under Akahori for examples four and seven that fall outside of the claimed range. So it's not necessarily present, the stiffness value, when you look at examples four and seven. But if you use the 20 micron average thickness, it does fall within the claim. If you use just that one, but that's just one possibility, right? So this is in Ray Ulrich where you can't establish inherency by mere probabilities or possibilities. And so if we're going to look at it and try to determine an appropriate way to do the analysis, we would need to look at the lowest K value and the highest K value. Use both of those K values separately in the stiffness equation and see what the lowest stiffness value would be and the highest stiffness value. I guess the retort to that could be, what about the fact that maybe there's many obvious variations of a polyimide film with various thicknesses as taught by or suggested by Akahori? And then some of those maybe won't end up in your claimed stiffness range, but others are. And then if those others in fact are, then what that amounts to is this patent trying to take back and patent something that was essentially known or an obvious variation of what was known and already part of the public storehouse. Well, and that's the Santoros line of cases, and we discussed that earlier. So those cases are different because they're talking about what's the natural result of the claimed element. The thickness value is not a claimed element. And so here we have the board saying that thickness, which is not explicitly disclosed, and they're saying that that's obvious. And then they're using that not-explicitly-disclosed element in contrast to pharmaceutical, and they're using that variable in the stiffness equation in order to assert obviousness. And this is also contrary to In Re Ricard, which says where the board assumes certain variable values and use those variable values to assert that the prior art inherently disclosed the missing element. Counsel, do I hear you objecting at all to the board's use in the regression analysis of the applicants of the patentees' data in the calculation of K? It's not an objection to their use of that. It's an objection to their exclusive use of that one K value because that is just one mere possibility for the K value. There are other alternative possibilities for the K value. And in order to conduct a carefully circumscribed analysis of inherency in this broader context of obviousness, the board should have used the low K value and the high K value and the low thickness value and the high thickness value in order to determine whether or not the resulting calculated stiffness value is necessarily present in the PI films disclosed. K is a constant, though, right? And it's a proportional constant. And so the goodness of fit number, the R squared number, was really high when you do the regression analysis. So it seems like there is substantial evidence in the record for the board to have said that this calculated K based on all these data points is the appropriate measurement of the K constant. Well, what the board said in the context of inherency was that Akahori does not inherently disclose a film that has a calculated stiffness value within the claimed range. And that was in the context of its anticipation analysis. And that's why it reversed the anticipation rejection. And then what the board did was it went over to the obviousness context and it failed to carefully circumscribe its inherency analysis. So instead of using explicitly disclosed elements, it used suggested elements or assumed elements if we want to use the language of N. Ray Rickert. And so what the board is doing is it's using assumed values and plugging them into an equation to assert that the prior art discloses inherently the missing element from the claim. You're out of time. We'll restart in a minute. Thank you very much. May it please the court, my name is Mark Sweet representing the Appellee. I think we need a little bit more specificity in this discussion. First off, I'd like to talk about the discussion you're having regarding why the claims were anticipated. It wasn't that an average thickness was not expressly disclosed. It was the fact that an average thickness as measured by the ten point variable parameter that was set forth in the patent, that is what the board said was not explicitly disclosed. They made specific reference to measuring the thickness at ten regular intervals along the horizontal plane of the film. And they said in their decision at page 19 that that thickness as measured, the average thickness as measured by the patent wasn't present. And I believe that specific reason is why the claim was not anticipated. Then they went step two and they said, but based on this discussion of an average thickness, an average thickness of 20 microns would be obvious in view of the particular disclosure of a thickness range of 15 to 25. So I think it's important to emphasize the specific findings of the board here because they were looking at a lot of substantial evidence and they made some very, very specific findings. Using that specific finding of 20 microns, they then focused on example seven of Akahori. And using the calculation for thickness, using that average thickness of 20 microns, using the K value that was a result of the specific regression analysis, they were able to necessarily and inevitably conclude that when you plug those numbers into the equation, it necessarily and inevitably results in that stiffness value. Okay, which takes us to the same question, that the regression analysis didn't use numbers, figures from the prior art. That's right. It's very strange, isn't it, to take what the inventor discloses and say I'm going to use your disclosure, which nobody else published or made available. I'm going to use your own information in order to recalculate and show that what you've done would have been obvious. It's being used as a definition. It's being, because there was very little guidance on how to measure the stiffness. They say you can either use the machine, the particular loop testing machine, or you can use this equation. And the only guidance, other than the particular equation that's set forth in the 704 patent, are the results of the examples. But that's what the inventor taught. Where can you find this in the prior art? In the prior art, you can find that there is a known relationship between the stiffness, the thickness, and the modulus. That was known, bless you. That relationship was known. And using that known relationship and using the values in the example, that was the only way you can determine what the K value was. Without that, there is absolutely no guidance to what the K value means. If the only way you can invalidate a patent is to use the disclosure in the patent itself, that doesn't fit any of the requirements of requiring that it was already known. Well, we're not using the disclosure against them. Again, we're using that disclosure as a definition. What do the terms mean? You use the disclosure to calculate the number, which was the basis for obviousness. We did use the disclosure of... We used the formula that was known and expressly recited in the 704 patent. And then we used the examples to generate this linear regression to come up with a value for K. Otherwise, the K value is meaningless in that patent. It's meaningless because it was unknown and unknowable until you used the inventor's teaching. The K value is a constant and it's a necessary result of the equipment that's being tested at the testing protocol. And that's set forth by Dr. Thomas in his declaration. And using that testing protocol, the K factor is a result of that analysis. Is this the only basis for supporting the opinion on appeal? The presence or absence of the K value? How the K value is calculated by the regression analysis. If there is no reliance on the examples, which is the only guidance present in the 704 patent, there is no value for the K. The K value cannot be determined. It would be all over the map. It could be anything and everything. And Dr. Thomas has testified and the PDO has accepted that the K value is a value that is specific to the testing protocol machine that's being used. The conclusion was not on the number assigned to the K value. Could you repeat that, please? The decision of obviousness didn't turn on the number, the assignment of value to K. Well, the assignment of the value of K, you have to plug it into the equation. It is a variable. It's one of the variables in the equation. It necessarily needs to be present for the stiffness calculation to be able to be made. Didn't state the thickness? The thickness was the 20 micron average thickness that was held to be obvious by the board based on the explicit disclosure of the 15 to 25 range as measured by the particular test method that was in the 704. I guess your point is that Akahori teaches all the claim limitation or teaches or suggests the 20 micron average thickness. And now we need to figure out whether Akahori, that obvious film, has necessarily the claimed stiffness range or values. And the only way to do that in terms of comparing apples to apples with the claimed ranges based on the examples given by Kanika is to use the same K to make the calculation for the stiffness value. That is correct. That's your position, is it not? At least I had taken from your presentation that your position was that the thickness was obvious from the prior art, not how it was calculated. Is that wrong? The finding of the PTAB, and I broke it out specifically, the finding of the PTAB was that the thickness was not anticipated because based on the disclosure of a thickness of 15 to 25... But that it would have been obvious... It definitely would have been obvious, but it's... Akahori didn't use a regression analysis in order to calculate how the formula worked. No. No, but again, we're missing information, and the point is, based on substantial evidence below, if you take that average thickness of 20 microns, and again, we're focusing very specific, 20 microns in example 7, and you plug that into the formula that is the definition on how to determine stiffness, you necessarily and inevitably result in a value within the scope of the claim, when you use the K value determined based, again, on the only guidance present in the 704 patent. So, what about the other side's concerns, and Megha's concerns, about how what you're doing is picking and choosing and optimizing the thickness value based on all the teachings in Akahori? Akahori teaches a range of thickness values, and you cherry-picked the one that suits your needs. We didn't cherry-pick the thickness at all. There's a range of 15 to 25 disclosed, and the claim is an average thickness of 20, to smack-dab in the middle. That is what the substantial evidence below caused the PTO to conclude, that that thickness would be obvious. After making that initial determination, it would be obvious to plug it in. If you took an average thickness of 15 microns, which Akahori teaches or suggests, or an average thickness of 25 microns, and then you threw it into the equation for a stiffness value, you would end up with a stiffness value that's outside of 0.4 to 1.6. In some circumstances, yes, you would, depending on the examples that are being used. So, therefore, what you get from the teachings of Akahori is a result that does not necessarily inherently always end up with a stiffness value within the claim range. Yes. So, what's your response? My response to that is that wasn't the holding of the PTAB. It was a very specific holding that focused on 20. We're not talking about a big, broad range of numbers. We are talking about a specific one number. The 20 micron average thickness is obvious, period. And then using that determination, the calculation is made to show that the stiffness necessarily and inevitably results. And, again, based on that, it was, again, a very focused inquiry on that thickness. I'm thinking, I'm trying to, one of the things which comes through fairly clearly is that it's very hard, really, to find a difference between what has been patented and Akahori and some of the disclosures. And yet it still seems peculiar the way the office reached that conclusion. And so I've been listening for you to tell us why it nonetheless is supportable, even if you don't have to rely on the inventor's own disclosure in order to say that what he's doing was already calculable. Sure. If you pick the right numbers for your calculations. But we've pointed in the record to evidence that shows that the relationship between the stiffness and the thickness and the modulus were known. The equation that's in the patent is not a new equation. To the extent that there's anything unique about the equation that's specific to the 704 patent, it's solely the K value. But the only numbers that were used in the equation were what the inventor taught us. The only number we used in the equation that was not in the prior art is the K value. And the only way we can know a meaning of what that K value is... The only regression value to calculate K, not K itself, isn't that right? Well, the regression analysis produced K. So that's how we came up with K. K is the result of the regression analysis. The calculation of K. The result of the analysis, that's correct. I mean, K is the slope of the line when you plot all the data points. And as Judge Shen mentioned, it was done two times and the R2 value, dealing with the fit of those numbers, was a very, very high correlation. So it was a good line. And that line was the K value. It was the result of the analysis. Except they haven't claimed K. They've claimed the thickness and the stiffness. They've claimed the stiffness, that's correct. And they've only disclosed two ways to get at the stiffness. One is by using this loop tester to make a physical measurement of it, which the patent office said, hey, we don't have machines, we can't do that. So it's completely reasonable to rely on the other method that was disclosed, which was the equation to determine the stiffness. And in order to use that equation, you have to have a definition for what K is. What does K mean? What guidance is provided? And the only guidance that is provided for what K means is in the examples and the use of those examples, the 12 examples, either by itself or with the two comparative examples, to do the regression analysis to come up with the line that's the K value. And I've been waiting for you to tell me where that's in the prior art. Again, what's in the prior art is the relationship between the stiffness and the thickness and the modulus. And what is also known, based on the testimony of Dr. Thomas, is that the K value, the fact that it's going to be necessarily present in all those locations, are dependent on the protocol and the machines that are being used in whatever particular circumstance that you're in. There's not one magic K value that's out there. The K value is dependent on, again, the protocol and the machine that's being used. So the only way we can figure out what the K value means is to look at the examples, to find out what guidance, what definition exists for that K value. Just curious, why is the K value, which is deemed to be a constant, not really a constant? When I think of a constant, I think of Avogadro's number. Here, we're being told, and maybe there's substantial evidence to support it, that the K is in some ways dependent on testing protocol or testing equipment. Why would it be that a constant can fluctuate based on those factors? I think it's a constant based on the particular protocol that's being used. Again, that's what Dr. Thomas testified to in the record. Unlike Avogadro's number, 6.02 times 10 to the 23rd, that's there. There is one Avogadro's number. There is not one K value. Again, it's dependent on the particular protocol that's being used. In this case, in the 704 patent, there is one K value, and that's the K value that was calculated. Based on the testing protocol, the patent owner did develop his examples, and you want to use that same K value, so you're comparing apples to apples. I understand that. I'm just trying to understand in terms of background why we're calling something a constant when it sounds like it's dependent on some factors. Therefore, it's not really like Avogadro's number, which is a constant. It's certainly not like Avogadro's number. Again, that's one number and only one number. Again, here, because the K value is a constant that has a dependency on the particular protocol, it is only a constant to that particular protocol. So, if the universe was simply the 704 patent, the protocol listed in the 704 patent, there would be one K value for that, and that's what was being relied upon to calculate the stiffness. Thank you. Just a couple of points in rebuttal. Just a quick question. Is Akahori one of the co-inventors of this patent? Yes. Yes, that's correct. Okay. Just a couple of points. The invention is based on, I guess, the developments that the co-inventors come up with earlier. Akahori is the lead inventor of the prior art reference and then is a co-inventor. A different inventor is the lead inventor of the 704 patent. Well, they're listed as co-inventors. Correct. Yes. So, working in the same area, obviously, polyimide films, and then discovered an interesting preferred range for a property called stiffness. Yes. Okay. So, a couple of points. First of all, there was a discussion about K and it's not being constant, and I'd just like to reiterate the Appendix 1 in the request for re-examination, which demonstrates that in the 704 patent, there was one protocol used to evaluate the stiffness of the films, and that was the loop stiffness tester. And using that one protocol, all the films were evaluated for stiffness, and the result, when it comes down to the K values, that there were multiple different K values calculated by the requester and set forth in Appendix 1. So, there's clearly no one constant K value, even when you use the same testing protocol for all of the films, which is what was done in the 704 patent. So, that's the first point I wanted to mention. And then the second point, I also just want to mention that the appellee admitted that the stiffness value is not inherent in Akahori. And there was a discussion with Judge Chin, where they were talking about the values that come out when you look at the range of thickness, and when you look at the range of thickness at 15, the appellee admitted that the resulting calculated stiffness value falls outside of the claimed range. Right, but their retort is that Akahori teaches or renders obvious a lot of different versions of polyimide films. These were all well known in the art. 15, 16, 17, 18, 19, 20 micron thickness. They were all part of the prior art. They were all part of the storehouse of knowledge already. One of those, the one that's 20 microns, when you use an average thickness of that one, it's going to end up having the stiffness range that has been recited and is an inherent property of the 20 average micron thickness version of Akahori. That is their argument. Well, and that argument runs afoul of this court's precedence in Rickert and also in Par Pharmaceutical, because Par Pharmaceutical tells us that we can only use the explicitly disclosed elements when we're analyzing inherency in the context of obviousness. But a classic obviousness analysis isn't always just based on explicit teachings in the prior art and then whether there's a motivation to combine explicit teachings in the prior art. It also includes an analysis of whether something that is in the prior art would be nevertheless obvious to modify it, adjust it in some minor trivial way. And then you look at that variation, and if that meets the claimed invention, then that likewise goes down under Section 103. And so if an inherent property of a minor variation of something that's already existing in the prior art, why wouldn't that likewise go down just as the claims in In Re Cao went down? Because this court's precedence says that it can't. And in Par Pharmaceutical, in Schering v. Geneva, all of these cases say that the inherency must be based on elements that are explicitly disclosed. And so if we look at the different ranges of thickness, those are just mere possibilities. And that's In Re Ulrich, which tells us that we can't establish inherency based on one mere possibility. And so we have to stay firmly grounded in the context. And it's not just an obviousness inquiry. This is inherency in the context of obviousness. And that's why Par Pharmaceutical is the controlling case law, because Par is talking directly about the use of inherency in the context of an obviousness analysis. The ultimate holding in Par was not that the only way you can do inherency is based on explicitly taught elements and combining them. The ultimate holding in Par was that when you did have a combination that was obvious, the panel in the court was not convinced that the property resided in the claim was in fact inherently taught in that obvious combination. And so that was the holding of Par. Otherwise, the more basic understanding of the law is that when there's a claimed invention that's obvious in view of the prior art, if the claim also resides in inherent property that would inherently be part of the obvious invention, of the obvious combination, then the claim doesn't survive under one of these. Well, and this is under the Santaris line. And this case is different than the case in Santaris. That line of cases and what you're referring to is whether or not it's the natural result of the pharmaceutical composition or of the other claimed element. And in this case, the stiffness value range that's claimed is not the natural result of the other claimed element. We have to remember that thickness is not a claimed element. And so when you take the composition and you turn it into a PI film, it could have any variety of different thicknesses. And so the natural result from a stiffness standpoint is not necessarily within the claimed range. So it's not inherent. The natural result is any number of different stiffnesses. And so when we look at Akahori, we can't say that using Akahori and looking at the Santaris line of cases that we end up with an inherent in obviousness. And I know I'm out of time. Thank you very much, Your Honor. Thank you. We thank both counsel and the cases submitted. That concludes our proceedings for today. All rise.